IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) CR 10-185 (See CA 15-1167) |
| NEALE J. MISQUITTA, | ) |
| | ) |
| Defendant/Petitioner. | ) |

MEMORANDUM OPINION

Petitioner Neale J. Misquitta, on September 8, 2015, filed a pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 181) and memorandum of law in support thereof (Doc. No. 182). Upon consideration of this motion, and upon further consideration of the Government's response thereto (Doc. No. 187), filed on November 13, 2015, Petitioner's reply to the Government's response (Doc. No. 193), filed on May 6, 2016, and the Government's Sur Reply thereto (Doc. No. 196), filed on May 17, 2016, the Court denies Petitioner's motion for the reasons set forth below.

**I.    Background**

On September 16, 2010, an indictment was returned by the Grand Jury charging Petitioner with multiple counts of mail fraud, in violation of 18 U.S.C. § 1341. On November 7, 2012, after a jury trial, Petitioner was found guilty of five of eight counts. On July 2, 2013, the Court sentenced him to a term of imprisonment of 71 months to be followed by three years' supervised release, and restitution of $1,301,528. (Doc. No. 170). Petitioner subsequently appealed and challenged his conviction and sentence on a number of grounds, including that the evidence on the issues of intent, materiality, and use of the mail was insufficient to sustain his conviction, that the District Court erroneously excluded evidence that would have supported his

1

theory of defense, that the District Court erred by not considering the possibility that he would be deported when fashioning his sentence, and that the District Court erred in finding that the companies involved suffered a loss of $1,301,528. On June 5, 2014, the Third Circuit Court of Appeals affirmed Petitioner's conviction and sentence.

On September 8, 2015, Petitioner, acting pro se, filed the present motion pursuant to 28 U.S.C. § 2255. On September 10, 2015, in accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), the Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain very specific and rare circumstances exist. With that in mind, Petitioner was ordered to advise the Court as to how he wished to proceed in this case, and specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit certification, or whether he wished to withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period of the AEDPA. Petitioner responded with a request that the Court rule on his motion as filed, and the Court proceeded accordingly. The Court will address the claims raised in Petitioner's motion below.

**II.     Discussion**

Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999). However, even a pro se plaintiff must be able to prove a "'set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

As noted, Petitioner brings his pro se motion pursuant to Section 2255. This statute permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

In his motion and supporting documents, Petitioner claims he is entitled to relief under Section 2255 on the basis of ineffective assistance of counsel.[1] In raising this claim, Petitioner identifies two areas in which his attorneys were allegedly ineffective. First, he alleges that his attorneys improperly advised him of the "consequences" of accepting a plea offer from the Government, causing him to reject the plea offer and go to trial where he was convicted. Second, he argues that his counsel erred in not seeking a downward variance in his sentence due to the unusually harsh conditions of confinement that he is now being subjected to because of his status as a deportable non-citizen. For the reasons that follow, the Court finds no merit in Petitioner's claims and finds that the record conclusively shows that he is not entitled to relief under Section 2255 on either of the grounds that he alleges.[2]

A defendant seeking relief under Section 2255 on the grounds of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice

---

[1] It appears that Petitioner's first argument pertains to his trial counsel, while his second argument concerns his sentencing counsel. Robert Ridge and Lourdes Sanchez Ridge were Petitioner's trial counsel, and his counsel at the time of sentencing was Stephen S. Stallings.

[2] Since the record itself conclusively shows that Petitioner is not entitled to relief, no evidentiary hearing is necessary.

as a result—that is, there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90) (internal quotation marks and citations omitted). "'It is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.'" United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

### A. Failure to Properly Advise Regarding Plea Offer

Petitioner first contends that his attorneys were ineffective because he was improperly advised of the "consequences"[3] of accepting the Government's plea offer and that, as a result, he rejected that plea offer and proceeded to trial where he was convicted and received a longer sentence than he would have received under the terms of that plea offer. (Doc. No. 182, at 14). Petitioner argues that, "had he been adequately counseled," it is reasonably probable that he would have accepted such plea offer, resulting in a sentence of 27-33 months instead of the 71 months that he received after his trial. (Doc. No. 182, at 17).

---

[3] Although Petitioner uses the word "consequences," which has a somewhat negative connotation, he appears to be addressing the supposedly overlooked benefits of the Government's alleged plea offer.

4

The Court emphasizes at the outset that Petitioner has provided no evidence whatsoever—other than his own descriptions of what he believes the purported plea offer to have included—to support his contention that a plea offer from the Government actually existed. Additionally, the Government vehemently denies the existence of any such plea offer, explaining that the parties' negotiations never progressed to the point where a plea offer was made. Further, the Government asserts that it never discussed—nor even contemplated—agreeing, as part of a plea offer, not to oppose a "'two level variance for the unusually harsh conditions of confinement [related to] being a deportable non-citizen."[4] (Doc. No. 187, at 3 (quoting Doc. No. 182, at 5)).

Nevertheless, assuming that such a plea offer actually existed for purposes of argument here, the Court notes that Petitioner does not assert that his counsel failed to inform him of the existence of that plea offer.[5] Petitioner also does not contend that he wished to accept the alleged plea offer but that his counsel refused to communicate that choice to the Government.[6] Instead, Petitioner argues that his counsel advised him to go to trial based on their defense theory rather than accept the alleged plea offer, that Petitioner relied on this advice and declined to accept that plea offer, and that this very advice constitutes representation that falls below the objective

---

[4] The issue of a variance for harsh conditions of confinement is discussed, <u>infra</u>, in relation to Petitioner's second argument.

[5] Petitioner admits in his brief that he "was informed, in passing, about the plea offer." (Doc. No. 182, at 5). Moreover, he explains in great detail, and—given the lack of supporting documentation—apparently from memory, the specific terms of that alleged plea offer. (Doc. No. 182, at 5 n.1; Doc. No. 193, at 5 n.3).

[6] The Court notes that Petitioner contradicts himself by stating initially that his counsel did not seek his consent to reject the alleged plea offer, but by then admitting that "Mr. Misquitta relied on that advice," and "rejected the favorable plea offer he otherwise would have accepted." (Doc. No. 193, at 2; Doc. No. 182, at 20 (also explaining that "as a result of this improper advice Mr. Misquitta rejected the plea offer and proceeded to trial where he was convicted of the charges")). Petitioner cannot both never have given consent to reject the plea offer <u>and</u> have chosen to reject the plea offer based on his counsel's advice. Regardless, the second version of events is the one consistent with the rest of Petitioner's statements and argument.

5

standard of reasonableness because Petitioner lost at trial and received a longer sentence than he would have received had he accepted that plea offer.[7] However, Petitioner explains only in the most general terms that, because of his counsel's failure "to grasp the facts and evidence," and "giving the impression" that a plea offer was unacceptable based on the likelihood of their defense theory prevailing, the "prosecution's overwhelming evidence" against him and the resulting 71-month sentence he received show that his counsel's advice that he was likely to get an acquittal was objectively unreasonable. (Doc. No. 182, at 19).

As to the first prong of the Strickland inquiry, the reasonableness of counsel's conduct, the Court notes that Petitioner's allegations of ineffective assistance are extremely vague. Although Petitioner asserts that his counsel's advice to go to trial was objectively unreasonable, he makes no real attempt to explain what exactly was unreasonable about it—other than pointing generally to the amount of evidence against him and the fact that, when he proceeded to trial in reliance on his counsel's advice, he lost and received a longer sentence than he would have

---

[7] As part of this argument, Petitioner also notes that his counsel failed to advise him of his real exposure if the matter proceeded to trial. It is unclear from Petitioner's brief exactly what his argument consists of in this regard, but it appears to be based on a sentence reduction he hoped to get because of the possibility of deportation. Regardless, Petitioner states only that his counsel assured him that the district court would *consider* the possibility of defendant's deportation when fashioning his sentence.

Petitioner also explains that his counsel continued to advise him after trial that he would be able to get a sentence reduction based on the possibility of deportation and loss calculations, but any such post-trial assurances would have been irrelevant to Petitioner's decision whether to accept a plea agreement.

In any event, Petitioner's counsel argued at sentencing for a sentence reduction based on the possibility of deportation, but the Court, after consideration, declined to grant such a reduction. That decision, which was within the Court's discretion, was subsequently affirmed by the Third Circuit on appeal. The Court notes that Petitioner has not shown how he was prejudiced by his counsel's advice on this issue since, regardless of the Government's position on opposing such a reduction, the Court would have had to agree to such a reduction whether Petitioner pled guilty or was convicted at trial. Thus, as a side point, because Petitioner has failed to show that the Court would likely have agreed to such a reduction based on deportation as part of a plea agreement, he has failed to explain how the outcome of his sentence was changed by his counsel's advice in this regard.

received under the terms of the alleged plea offer. Petitioner's Statement of Facts recounts the events of his trial, including his summary of the evidence presented by the Government and the defense that was mounted, but he fails to specify any particular facts to support the argument that his counsel's advice to proceed to trial based on such a defense was objectively unreasonable. Because Petitioner's allegations as to the unreasonableness of his counsel's advice are so lacking in specificity, so vague, and so conclusory, the Court finds that further discussion of this contention is unwarranted. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988).

Additionally, to the extent that Petitioner's argument could be interpreted as criticizing the defense theory itself, then he would appear to be attacking the actual trial strategy, over which counsel generally has decision-making authority. See Virgin Islands v. Weatherwax, 77 F.3d 1425, 1433-34 (3d Cir. 1996). Here again, although Petitioner asserts that his counsel's advice to go to trial was objectively unreasonable, he makes no attempt to explain precisely what was unreasonable about his attorneys' reliance upon their defense strategy. Petitioner does not contend that his counsel failed to consult with him concerning crucial trial strategy issues, nor does he assert that his counsel pursued a strategy contrary to Petitioner's wishes. Simply losing at trial does not prove objective unreasonableness on the part of his counsel. See, e.g., United States v. Harris, 2013 WL 596370, at *9 (W.D. Pa. Feb. 14, 2013) (noting that "the failure to prevail on an issue does not equate to ineffectiveness"). Instead, this Court must be deferential to counsel's tactical decisions, must not employ hindsight, and must give counsel the benefit of a strong presumption of reasonableness. See Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994).

Finally, rather than specifying what was objectively unreasonable about his counsel's performance, Petitioner states that the Government essentially concedes this fact. (Doc. No. 193,

at 1 ("Other than the prosecution's conjecture and inferences, the parties in this case agree that Defendant, Neale J. Misquitta, received advice from his counsel that was objectively unreasonable.")). Petitioner's claim is patently false, however, as the Government explicitly denies that the conduct of Petitioner's counsel was objectively unreasonable.[8] (Doc. No. 196, at 2).

Accordingly, to the extent that Petitioner believes that his counsel's representation was not sufficient, he frankly has provided no specific evidence to overcome the presumption that his counsel's performance was reasonable. Neither the mere fact that Petitioner may now disagree with the manner in which his counsel responded to the Government's prosecution of the case— nor the fact that, in hindsight, Petitioner disagrees with his counsel's advice regarding accepting an alleged plea offer rather than going to trial—establishes that Petitioner's counsel's performance was objectively unreasonable. Additionally, Petitioner's declaration that the Government concedes that his counsel's performance fell below objective standards of reasonableness does not make it so. Petitioner has thus failed to establish that his counsel's failure to properly advise him regarding the alleged plea offered by the Government violated the reasonableness prong of Strickland. Therefore, there is no basis for affording relief based on Petitioner's first ground.

### B. Failure to Seek a Downward Variance

At sentencing, Petitioner's counsel argued for a downward variance based on the likelihood of Petitioner being deported at the end of his term of incarceration, but as discussed, supra, the Court rejected that argument. Petitioner now claims that his counsel provided him with ineffective assistance in failing to seek a downward variance based instead on the unusually

---

[8] In a similar vein, Petitioner also declares that the Government concedes that his "counsel's performance is constitutionally deficient in this case." (Doc. No. 193, at 3 n.2). The Court notes that the Government does not make any such concession.

8

harsh conditions of confinement that he now endures in the facility where he, a deportable non-citizen, is incarcerated.[9] Specifically, Petitioner contends that the Adams County Correctional Center ("ACCC"), where he is housed, does not meet the minimum standards of health and habitability. Petitioner bases his allegations of substandard conditions on an independent study of the facility, and on an affidavit of an FBI officer from a district court case from the Southern District of Mississippi. (Doc. No. 182, at 19).

Here again, in order to prevail on the issue of ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that that deficient performance was prejudicial. See Sistrunk, 96

---

[9] Petitioner notes a number of other examples of how, as a deportable non-citizen, he has allegedly been subjected to unusually harsh conditions of confinement, including by being ineligible for early release, half-way houses or minimum security prisons, by the unavailability of adequate rehabilitative programs, by not being housed at a facility closer to his family, and because of various questionable consequences to his wife and children. However, such issues are common among deportable non-citizens generally, and do not make Petitioner's case extraordinary in any way. Thus, they are not atypical or unusual factors that would justify a claim that it was unreasonable for Petitioner's counsel not to have argued that exceptional circumstances justified a departure in this case. See, e.g., United States v. Lopez-Salas, 266 F.3d 842, 849-50 (8th Cir. 2001) (explaining that for a court to base a departure on the fact that a deportable alien is not eligible for early release to a half-way house, there must be additional facts to make his case "atypical or unusual," and that departure because of some increase in severity of conditions of confinement is only appropriate in "exceptional circumstances"); United States v. Bautista, 258 F.3d 602, 607 (7th Cir. 2001) (departure based on collateral consequences of deportation is only proper if defendant's circumstances are "extraordinary"); Lora-Pena v. United States, No. 05-47, 2008 WL 5225436, at *12 (D. Del. Dec. 15, 2008) (holding that because there was nothing extraordinary about defendant's case to make his ineligibility for placement in a half-way house or other programs any more unusual or exceptional than any other deportable defendant, he could not show that failure to raise that issue on appeal prejudiced him); United States v. Smith, 27 F.3d 649, 655 (D.C. Cir. 1994) (stating that the BOP has discretion in determining conditions of confinement and makes determinations in that area based on a wide variety of factors in addition to alien status, so circumstances justifying departures based on increased severity of conditions of confinement faced by a deportable alien may be "quite rare").
  The only special circumstance that Petitioner provides to explain why his counsel should reasonably have argued that his case was atypical, and thus entitled him to a downward variance, is that he is now subject to a substantially more onerous prison term than anticipated by the framers of the guidelines because, after sentencing, he was placed at ACCC.

F.3d at 670.  The main problem with Petitioner's argument is that he was not sent to ACCC until after he was sentenced by this Court, and it is the Bureau of Prisons—not the District Court— that made the determination that Petitioner would be housed in that facility.  To establish that this particular part of his counsel's performance was objectively unreasonable, Petitioner must therefore show that, at the time of sentencing, his counsel reasonably should have known that the Bureau of Prisons would ultimately choose to send him to ACCC for incarceration, that his counsel reasonably should have known that ACCC does not meet the minimum standards of health and habitability, and that, even knowing this information, his counsel still failed to argue for a downward variance based on his future placement in that facility.  Petitioner, however, has not shown the existence of any such facts.

Moreover, even if Petitioner <u>could</u> show that his counsel's performance here fell "outside the wide range of professionally competent assistance," in order to prevail under the <u>Strickland</u> test, Plaintiff would also have to show prejudice.  466 U.S. at 690.  In order to establish prejudice, Petitioner would have to show that, had his counsel made this argument at sentencing, there is a reasonable probability that the outcome would have been different.  Therefore, Petitioner would have to show that the Court would have agreed with his counsel's argument, that the Court would also have agreed to reduce Petitioner's sentence—and that the Court would not simply have requested that Petitioner be placed in a facility other than ACCC.  Petitioner, however, has failed to establish that any such outcome would have been likely and, thus, that he was prejudiced by his counsel's failure to make this argument.

Finally, the Court emphasizes that Petitioner's claim appears to be, in actuality, based on the execution of his sentence, which is a matter solely within the province of the Bureau of Prisons and is not a cognizable claim in a Section 2255 petition.  The Court simply sentenced

Petitioner to a term of imprisonment; it did not sentence Petitioner to a specific facility. To be clear, nothing in the Court's sentence requested that Petitioner be placed at ACCC. The decision of where to house Petitioner fell solely within the purview of the Bureau of Prisons. Thus, any issue that Petitioner has with his placement in this particular facility should properly be brought up with the Bureau of Prisons—not with the District Court. To the extent that Petitioner is actually challenging the conditions of his confinement, he should instead seek proper redress by filing a motion pursuant to 28 U.S.C. § 2241.

Accordingly, there is no basis for affording relief based on Petitioner's second ground.

### III. Conclusion

For the above-stated reasons, Petitioner's motion is denied in its entirety. Further, this Court will not issue a certificate of appealability in this case. A certificate of appealability may issue under Section 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right, and a certificate of appealability should not issue in this action.

s/ Alan N. Bloch
United States District Judge

Date: March 1, 2018

ecf: Counsel of record

cc: Neale J. Misquitta, Fed. Reg. No. 32604-068
Adams County Correctional Institution
P.O. Box 1600
Washington, MS 39190